## Case No. 13,070.

SMITH et al. v. The JOSEPH STEWART.

HOY et al. v. The JOSEPH STEWART.

[Crabbe. 218; 1 Liv. Law Mag. 606.] [1]

District Court, E. D. Pennsylvania. July 9. 1838; July 23, 1838.

SALVAGE—AMOUNT OF COMPENSATION—SEAMEN—WAGES—LIEN.

1. Where salvors are very meritorious, and the value of the vessel and articles saved is very

---

[1] [Reported by William H. Crabbe, Esq. 1 Liv. Law Mag. 606, contains only a condensed report.]

small, the court will exceed, in its allowance .of salvage, the proportion usually given.

[Cited in The Carl Schurz, Case No. 2,414.]

2. Where a vessel is abandoned at sea, the crew, shipped for an indefinite period, have a lien on her, in the hands of salvors, for their wages due at the last port of delivery · before the abandonment.

[These were two libels against the schooner Joseph Stewart, Crandell, master,—the first for salvage, by George Smith and others, mariners, and Richards & Bispham, for the schooner Caspian, and the other for wages, by Charles Hoy and others, mariners.]

The Joseph Stewart having been libelled for salvage by the parties in the first of the above suits, the claimants in the second suit, who had abandoned the schooner at sea, filed their libel for wages up to the date of the abandonment. It appeared that the libellants in the second suit shipped for indefinite periods; that they had made several voyages in the Stewart before the abandonment; and that the abandonment took place by order of the master.

HOPKINSON, District Judge. There are thirteen claimants.in this case. for salvage, including the owners of the Caspian. Nobody appears to oppose the claim. or to offer any reasons for regulating the allowance. I am obliged to proceed on ex parte evidence, and on that evidence the case appears to be as follows: On the 12th April last the schooner Caspian sailed from Mobile for Philadelphia. On the 25th of the same month she fell in with the schooner Joseph Stewart, on the coast of Florida. The Stewart was loaded with lumber, and was so far sunk as to have nearly two feet of water on her deck; her hatches were off, and she was abandoned by her crew. She had been stripped by another vessel of some of her sails, chains, running rigging, and many other articles. Some of the crew of the Caspian went on board of the wreck; the sea was breaking over her the whole time; they made fast to her a hawser from the Caspian and hauled her alongside that vessel. took off her deck load and put it on board the Caspian, as also the anchors, hatches, and everything left on deck. This so lightened her that they could commence bailing. They gained on the leak, and got her about half clear of water. After pumping for twenty-four hours, two plugs were discovered floating in the cabin, and, on searching, two holes were found in the bottom of the ·vessel, under the captain's berth. The holes were four or five inches apart, bored with a 2½ or 3 inch auger, were freshly cut, and the plugs new. The holes were then plugged up, and the vessel easily pumped out dry. A fresh breeze having sprung up. the hawser parted. Some of the crew of the Caspian then went on board the Stewart, taking with them provisions and other articles; and with great exertions and labor, and no small degree of good management· and skill, finally brought her into this port. This is the general outline of the case, without dilating on the state of the weather and the hardships and dangers incurred in performing the service. It seems that the Caspian had some passengers on board who took part with the crew in these services, and stand on an equal footing with them in point of merit.

The difficulty in this case arises, not in estimating the nature and value of the service, nor in ascertaining, from the frequent adjudications in our own country as well as in England, a rule of proportion for the reward of such a service; but the similarity, between this case and those alluded to, fails in the amount of property to be distributed by the court. The fund in those cases was large, and, of course, a fourth, a third, two-fifths, or even, as in one case, one-tenth, would afford a handsome remuneration for the labor and risk of the service, still leaving a large amount for the unfortunate owner. Here the fund is so small that the whole of it, distributed among these thirteen salvors, could hardly be considered an extravagant reward for their services. Yet we have no authority to treat this as a derelict. Authority is against ·it. Indeed the libellants claim as salvors, not as finders of property which had no owner; they ask for salvage, for a reward out of the property saved, for their services in saving it. The very nature of this claim is a demand on the owner. for a reasonable compensation,. for the service rendered to him in rescuing his property from a total loss; but if the salvors are to take all, the loss would be as total, to the owner, as if his property had been swallowed up by the sea. It would be manifestly absurd to call on the owner with such a demand, to restore him no part of the property saved. but to tell him they must have all for saving the rest. He is to pay for saving, when nothing is saved. Every reason and principle applied to a claim for salvage, implies that a part of the property saved is to be awarded to the salvors. and the rest restored to the owner. Heretofore under even the most desperate cases, by far the greater part was restored to the owner. Here is our difficulty in the case. After deducting the expenses of these proceedings—necessarily heavy,—and allowing to the salvors even a very moderate, perhaps it may be thought, an inadequate compensation, for their services and paying the demand for wages of the crew of the Stewart—not to the time of abandoning her by order of the captain, but to the last port of delivery—there will be but a few dollars· left for the owners of the wreck. I will do the best I can for these salvors, consistently with the regard I am bound to pay to the legal adjudications on the subject.

· I will make a short review of these adjudications. I have found no case where one-half of the gross proceeds have been given to the salvors. In The Aquila, 1 C. Rob. Adm. 37, the ship and cargo were found at sea, absolutely deserted, and there would have been a total loss but for the salvors. Sir William Scott allowed two-fifths. In The Trelawney, 4 C. Rob. Adm. 223 (Am. Reprint, Phila., 1804, p. 184), the ship was recovered from insurgent slaves, after a severe conflict; it was considered by the court as a recapture from pirates, and one-tenth allowed. In The Blenden-Hall, 1 Dod. 414, the ship was captured by the French and scuttled, and so found by the salvors. One-tenth was allowed. In The Raikes, 1 Hagg. Adm. 246, the ship was relieved by a steamboat from a perilous situation. The judge wished to encourage this service by steamboats, and allowed £200 for a ship and cargo worth £12,500. In Warder v. La Belle Creole [Case No. 17,165], the judge, professing to give "an exemplary reward," allowed one-third, in a strong case of service and danger. In Tyson v. Prior [Id. 14,319], a strong case, one-third was allowed. In Bond v. The Cora [Id. 1,620], one-third the gross amount of sales was allowed. In Weeks v. The Catherina Maria [Id. 17,351], which was a case of mere wreck, without any hope of safety, one-third of the articles saved was given.

The French ordinance says: "If the effects, however, wrecked, are found on the sea, or drawn from its bottom, the third part shall be immediately delivered, without expense, either specifically or in money, to those who saved them."

In this case the whole amount of sales, of vessel and cargo, was.......... $926 40

One-half of gross sales allowed to salvors, is.......... $463 20
Charges of sale............ 36 60
Proctor's, clerk's, and marshal's fees and commission ................... 121 55
Costs on wages' suit....... 12 79
Wharfage ................ 32 20
Allowed to owners of Caspian, for articles furnished to the wreck............... 55 20
Wages of crew to last port of delivery ................ 151 25
            872 79

            $53 61

·This statement shows, that by allowing to salvors one-half of the gross sales, and·deducting from the other half, all the charges and claims upon it, there will remain, for the owners, but $53.61. The salvage will be divided into thirteen parts, one of which shall be given to the owners of·the Caspian, and one to each of the twelve salvors.

Decree for the libellants.

On the 23d July, 1838, HOPKINSON, District Judge. decreed for the libellants, in the second suit, the whole amount of their wages, due at the last port of delivery before the abandonment.